## Stoner *versus* The Commonwealth.

1. If a husband leave outstanding the share due to his wife in a recognizance in the Orphans' Court, it is not liable to attachment by his creditors.

2. J. S. took land at an appraisement in the Orphans' Court and entered into recognizance for payment to the other heirs, of whom the wife of S. L. was one. Afterwards the recognizor became the bail of the husband in a note. Subsequent to this, the husband and wife transferred the interest of the wife under the recognizance, which was alleged to have been done to defraud creditors. Separate judgments were afterwards obtained on the note against the husband and his bail, the recognizor; and on the judgment against the husband the interest of his wife under the recognizance was attached, and J. S., the recognizor, made garnishee. Before judgment in the attachment proceeding the recognizor voluntarily paid the amount of the claim: *Held,* that such voluntary payment could not be used by him as a set-off against the claim of the assignee of the husband and wife under the recognizance, nor could it be pleaded in bar as payment of the recognizance; as garnishee he was bound to contest the claim of the attachment creditor, and payment before judgment against him was no defence to a suit on the recognizance for the share attached.

3. Where there is no order for a settlement of the wife's share under proceedings in partition at the time of the partition, the subsequent declaration of the wife made before a judge of the Orphans' Court, that her share of the money payable under the partition should be paid to her husband, is not equivalent to a reduction into possession by him.

4. None but the creditors of the husband can resist an assignment by him of a claim under a recognizance, made for the purpose of defrauding them. The debtor of the claim thus transferred can safely pay it on the foot of a judgment on the recognizance.

5. In the case of an assignment of a claim by one, who it was alleged was incapable from imbecility of mind to make it, the personal representatives of

the assignor after her death, and they alone, can contest the *bona fides* of the transaction, and only by an application to the court after the money has been recovered.

ERROR to the Common Pleas of *Dauphin county.*

This was a suit in the name of N. B. Eldred, President Judge of the Orphans' Court of Dauphin county, for the use of Simon Lingle and Susanna his wife, now for the use of Thomas S. Lingle, *vs.* John Stoner, a co-recognizor with John Crall. It was a scire facias on a recognizance entered into in the Orphans' Court of Dauphin county, by John Stoner, with John Crall as his bail, to Amos Ellmaker, President Judge, &c., *on the 31st October* 1815, in the sum of $4500; conditioned to pay to the several heirs of John Stoner, deceased, one of whom was Susanna, then the wife of Simon Lingle, their several and respective shares of and in the real estate of John Stoner, deceased, taken by the defendant at the appraisement under proceedings in partition; and also for the payment to Anna Stoner, widow, &c., the interest annually during her natural life, of $763.05, and the principal at her death to the heirs, &c., one being Susanna, then wife of Simon Lingle.

Anna Stoner (widow) died on the 21st July 1844, and this suit was instituted to recover the one-third of the sum assigned to the widow, to wit, $190.76½, with interest from the time of her death.

*Prior* to the death of the widow, *Simon Lingle,* husband of the said Susanna, one of the daughters of John Stoner, deceased, became involved in debt; among others, he became indebted, on the 17th November 1830, to Thomas Montgomery, in the sum of $130; and for the payment of which he gave his single bill, with *John Stoner, the defendant,* as his bail. The defendant also became his bail to other persons, whose debts he was compelled to pay.

On the 6th of August 1832, *Simon Lingle and Susanna his wife, for the purpose of defrauding his creditors, as was alleged on the part of defendant,* assigned, without any consideration therefor, to *Anna Stoner,* (widow,) the mother of Susanna, all their share, purpart, and interest in the recognizance, &c.; which assignment having been acknowledged, was on the same day recorded in the recorder's office of Dauphin county.

On the 27th of November 1839, *Thomas S. Lingle,* the plaintiff in this suit, procured from Anna Stoner an assignment *to himself* of the share in this recognizance which had been previously assigned by the said Simon Lingle and Susanna his wife (the father and mother of the said Thomas S. Lingle) to his grandmother, Anna Stoner. This assignment having been acknowledged, was also recorded in Dauphin county on the 29th November 1839.

After the execution of those assignments, to wit, *on the 29th of January* 1845, nearly six months after the death of Anna Stoner, widow, the said *Susanna Lingle* appeared before one of the judges of the Orphans' Court of Dauphin county, and there, in pursuance

of the provisions of the 48th section of the act of the 26th of March 1832, declared that she consented and agreed that the money she was entitled to, proceeding from the partition of the real estate of her father, John Stoner, deceased, (all of which was secured by the recognizance on which this suit is founded,) should be paid "to her husband, the said Simon Lingle, without any security or condition whatever;" which declaration was immediately filed and recorded in the Orphans' Court of Dauphin county.

On the same day, at the same time, as part of the same transaction, the said Simon Lingle, by an instrument of writing under his hand and seal, referring to and in part reciting the previous assignments of himself and wife to Anna Stoner, and that of the latter to Thomas S. Lingle, and the declaration of his wife, ratified, confirmed, established, and made good, &c., *the said previous assignments.*

Afterwards, viz. on the 28th of March 1845, the executors of Thomas Montgomery instituted in the Common Pleas of Dauphin county separate suits on the aforesaid single bill of Simon Lingle and John Stoner, *his bail, against Simon Lingle and John Stoner,* to April term 1845, Nos. 54 and 55; in which suits judgments were obtained on the 28th of April 1845, for $242.68.

On the 4th of June 1845, the executors of Montgomery issued an attachment execution against Simon Lingle, (founded on the above judgment against him,) with clause of sci. fa. to John Stoner as garnishee, for $242.68, with interest from the 28th of April 1845, and costs; which attachment was served upon the said John Stoner on the 6th of August 1845, who had then none other of the effects and moneys of the said Simon Lingle in his hands, except the money due upon the recognizance for which this suit was brought, to wit, the sum of $190.76½. And, as alleged by his counsel, having nothing to say why the said judgment should not be levied of the moneys then in his hands, and being unwilling to pay or encounter the risk of paying more money in costs on said attachment execution, the said Lingle being insolvent, he, John Stoner, paid to the plaintiffs in said attachment execution, the sum of $242.68, with interest from date of judgment, and the costs thereon, to an amount, it was alleged, equal to all that was then due and owing by him on the said recognizance.

On the 15th of September 1846, more *than fifteen months after issuing the said execution attachment,* and nearly *a year after John Stoner had paid $150 on the said execution attachment,* this suit was instituted by Thomas S. Lingle upon the aforesaid recognizance, to recover for himself and for *his sole use,* the sum of $190.76½, with interest from the 24th of July 1844, the time of the death of the widow, Anna Stoner.

To this suit the defendant, by his counsel, appeared, and, on the 14th of January 1847, pleaded, among other pleas, "payment and
2 п 2

[Stoner *v.* The Commonwealth.]

set-off, with leave to add, alter, and amend;" and on the 25th of October following, with leave of court, special pleas.

On the trial of the cause in the court below, the counsel of the defendant interposed as reasons why the plaintiff should not recover—

1. That the attachment execution, with clause of sci. fa., issued in the Court of Common Pleas of Dauphin county, to August term, A. D. 1845, No. 57, was a bar to the recovery of Thomas S. Lingle, the plaintiff in interest in this suit.

2. That the assignments by Simon Lingle and wife, given in evidence in this case, and the papers referred to therein, vested the interest in the cause of action in this suit in *Simon Lingle,* the husband.

3. That the assignment by Simon Lingle and wife to *Anna Stoner,* of the 6th of August, 1842, (having been made in fraud of creditors,) though good as between the parties to it, passed to Anna Stoner their interest in this recognizance to such an extent, that Lingle and wife can never controvert the validity of it; but such assignment was not good as to the creditors of Simon Lingle, who may call the same in question; and as to them, it is void.

4. That if the assignment by Simon Lingle and wife was good, and not a fraud upon creditors, then the interest in the recognizance, upon which this suit is founded, was and is vested in Anna Stoner; that her assignment to Thomas S. Lingle was not good, for want of consideration, as well as incapacity from her extreme old age, and from physical and mental debility, to make a contract that would be good, valid, or binding upon her; and particularly in the circumstances under which it was obtained from her.

5. That the payment by John Stoner to Montgomery's executors, of the judgment obtained against Simon Lingle, on the 28th day of April 1845, for $242.68, was a payment made in ease of Simon Lingle, and is a good and valid set-off, or equitable defence to the claim on which the present suit is founded.

6. That issue having been taken by the plaintiff upon the special pleas filed in this case, the question of whether the assignments as therein set forth were fraudulent, must go to the jury; and if they find the facts to be as stated in the special pleas, plaintiff cannot recover.

The court below charged the jury *that the plaintiff was entitled to recover.* That although there was every reason to believe the assignment was made by Lingle and wife to Mrs. Stoner with the intent and for the purpose of delaying, hindering, and defrauding the creditors of Lingle, yet the same was valid against all the world except the creditors who were intended to be defrauded, who must proceed according to law to avoid such assignment. That there can be but little doubt but the assignment made by Anna Stoner to Thomas S. Lingle could readily be avoided by her heirs

[Stoner v. The Commonwealth.]

or legal representatives, on account of the imbecility of the assignor at the time of the assignment, and the apparent overreaching and fraud practised in obtaining it; yet the present defendant cannot avail himself of that as a defence.   No one can take advantage of such fraud or overreaching but those injured thereby—the legal representatives of Anna Stoner, deceased.

The court charged against the defendant on all the points propounded by him, and at his request sealed a bill of exceptions.

It was assigned for error that the court erred in charging the jury that the plaintiff was entitled to recover; also in charging against the defendant on the several points propounded by him for the instruction of the court thereon to the jury trying the case; and in their charge in other respects as specified.

The case was argued by *Fisher*, for Stoner the plaintiff in error.

The attachment execution was here plead specially in bar of the plaintiff's recovery, according to the decision in 9 *Barr* 81, Maynard v. Nekervis; cited also 1 *Jones* 361.

As to the payment by John Stoner:—John Stoner knew that Lingle was insolvent, and that to contest the proceedings on the attachment would not only subject him to the payment of the amount of the money he was indebted on the recognizance, but also to costs.   Because he knew that the judgment was in full force, not paid nor disputed by Simon Lingle, and that the money due by him on the recognizance was fraudulently assigned by the father to the son, for the express purpose of defeating the recovery of this very debt from Simon Lingle, which debt had been attached in his hands *more than fifteen months before this suit was brought;* and therefore believed he was justified in paying over what he regarded as all that was justly due from him in this recognizance, to wit, $150; and subsequently in paying the amount of the judgment in full.

It was not contended on the trial that the whole amount of that judgment was not due by Simon Lingle to Montgomery's executors, when it was paid by John Stoner, nor that Lingle had ever paid any part of that judgment, nor that the attachment execution had issued for too much, nor that the judgment was an illegal, improper, or surreptitious one.   In the case of Ege v. Koons, 3 *Barr* 109, the debtor paid the money to the assignee of his creditor, *after* the attachment was served, and while it was pending.

The garnishee can insist on irregularities in the proceedings on the attachment: 4 *Barr* 296, 301.   Though a legal title is sufficient to maintain an action, yet, "where the commonwealth stands as a trustee in an official bond, it may be necessary to show

a particular injury as a title to her interference, in order to secure the obligor from an officious intermeddling:" Armstrong *v.* Lancaster, 5 *Watts* 68.

*Rawn*, contra.—" A husband has but a naked power over a bequest to his wife, and one which he is not obliged to exercise in favor of his creditors, nor is such bequest the subject of attachment for the husband's debt." " But if these be not taken into his possession or otherwise disposed of by him, they remain to the wife ; and·if he destines them so to remain, who shall object ? Not his creditors, for they have no right to call on him to obtain ownership of his wife's property for their benefit, *especially as their debts were not contracted on the credit of it*," &c. : Dennison *v.* Nigh, 2 *Watts* 90 ; 2 *Vesey* 676 ; 9 *id.* 174 ; 4 *Rawle* 182, 486 ; 2 *Watts* 90 ; 9 *New H. Rep.* 321 ; 4 *Pa. Law Journ.* 406.

6 *Watts* 238, Montgomery *v.* Cook, decides that " a person for whose use a suit is brought need show no right in himself; all that is necessary is to show the plaintiff's legal right to recover." See also to the same effect, 5 *Watts* 68, Armstrong *v.* The City of·Lancaster. A wife's choses are not liable to attachment for the debts of her husband : 2 *Watts* 90 ; 1 *Whar.* 179 ; 11 *W. & Ser.* 117.

The opinion of the court was delivered June 30, by
GIBSON, C. J.—The key of the case is that Simon Lingle, the husband of the recognizee, never was the owner of the money secured by the recognizance. The defendant's payment of his debt to Montgomery's executors could not be set off as money paid to his use in the character of a surety in the single bill, or pleaded in bar as payment of the recognizance in the character of a garnishee—as the·latter certainly not, for he was bound to contest every inch of the ground, and payment before judgment against him could be no defence to a suit on the attached security. Then as to the allegation of fraud in the subsequent assignments, Lingle entertained a groundless fear that his creditors might reach the money secured by this recognizance, and, to prevent them, assigned it. He certainly intended to defraud them, but failed, not for want of will, but for want of capacity. He parted with nothing that was accessible to them; for so long as he saw fit to leave the money secured by the recognizance outstanding, they could not touch it. Nor was his wife's consent before a judge of the Orphans' Court, that he should have it without settling any part of it on her, equivalent to a reduction of the money to possession. At most, it could be the removal of an impediment. But there was no order for a settlement at the time of the partition, and the subsequent assent to dispense with it was superfluous and a nullity. The effect of the assignment to Mrs. Stoner, then, was

[Stoner *v.* The Commonwealth.]

not to delay, hinder, or defraud Lingle's creditors; and if it were, none but they could resist it. The same thing, in effect, may be said of Mrs. Stoner's assignment to Thomas S. Lingle, the beneficial plaintiff. The fraud supposed to infect it cannot jeopard the defendant, who may safely pay on the foot of a judgment on the recognizance. The executors of Mrs. Stoner alone could contest the *bona fides* of the transaction, and only by an application to the court after the money had been recovered. The judge therefore properly charged against the defendant on all his points.

Judgment affirmed.